IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES M. S., JR.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 3:20-cv-726-DWD |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision partially denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB on March 16, 2016, alleging a disability onset date of December 30, 2015. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application on September 12, 2018. The Appeals Council denied Plaintiff's request for review on March 13, 2019. Plaintiff filed a complaint in this Court, seeking judicial review of the agency decision. After the parties filed a joint motion for remand, this Court remanded the case for further evaluation. *James M. S., Jr. v. Comm'r of Soc. Sec.*, No. 19-cv-431-DGW, Doc. 21 (Sept. 30, 2019). On October 25, 2019, the Appeals

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

Council remanded the case to the ALJ for further consideration in accordance with this Court's order. Plaintiff amended his alleged disability onset date to February 21, 2017. After holding a second evidentiary hearing, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled as of April 24, 2020.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the

national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). And this Court must reverse is the ALJ fails to follow the Social Security Administration's rulings and regulations, unless such an error is harmless. *Adams v. Saul*, 412 F. Supp. 3d 1024, 1027 (E.D. Wis. 2019) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006)).

In reviewing for "substantial evidence," the Court takes the entire administrative record into consideration but does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. At step one, he determined that Plaintiff had not engaged in substantial gainful activity since the

amended alleged onset date of disability. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and obesity.

At step three, the ALJ found that Plaintiff does not have any impairments or combination of impairments that meet any of the listings. Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) & 416.967(a) with the following additional limitations:

> The claimant can:
> - Occasionally lift a maximum of 10 pounds, but should not lift from floor to waist level;
> - Frequently lift and/or carry less than 10 pounds, but should not lift from floor to waist level;
> - Walk and/or stand for about 2 hours total out of an 8-hour workday for no more than one hour at a time;
> - Sit for about 6 hours out of an 8-hour workday for no more than one hour at a time; and
> - Push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying subject to:
> 
> Postural limitations of:
> - Never climbing ladders, ropes, or scaffolds;
> - Rare (defined as 0 to 20 percent of the workday) bending and twisting;
> 
> Manipulative limitations of:
> - No overhead work;
> 
> And
> 
> Environmental limitations of:
> - Avoid concentrated exposure to hazards such as unprotected heights.

At step four, the ALJ found that Plaintiff could not do his past relevant work as a heavy equipment operator. At step five, the ALJ relied on the testimony of a vocational expert ("VE") to find that Plaintiff was not disabled prior to April 24, 2020, because he

was able to perform other jobs that exist in significant numbers in the national economy. The ALJ found that on April 24, 2020, Plaintiff's age category changed and that there were no jobs existing in significant numbers in the national economy that he could perform given his age, education, work experience, and RFC. Thus, the ALJ found Plaintiff to be disabled as of April 24, 2020.

## The Evidentiary Record

Plaintiff lives with his two children in Illinois. (Tr. 874) He injured his back in 2015 while working for a coal mining company. (Tr. 848) He also injured his tailbone in February 2017. (Tr. 877) He receives injections and takes hydrocodone daily to manage his pain, but he cannot afford the cost of a surgery. (Tr. 851) On an average day, he rates his pain as a five or six out of ten without medication and a three or four out of ten when he takes his medication. (Tr. 850–51) He testified that he does not do any housework or yardwork. (Tr. 853) But he can drive if he takes breaks. (Tr. 879) He does not use any assistive device or wheelchair. (Tr. 880) He reported that his doctor tells him to lift no more than 10 pounds but that he feels pain even when lifting a gallon of milk. (Tr. 856)

In May and September 2016, state agency medical consultants reviewed Plaintiff's medical records and concluded that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds and could sit or stand for six hours in an eight-hour workday. (Tr. 85, 102–04) In 2019, another state agency medical consultant reviewed the record and concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. (Tr. 932) The ALJ gave no weight to these opinions because he believed that they failed to account for all of Plaintiff's exertional limitations.

5

Plaintiff was seen by Patrick Hammond, PA, at Regional Brain & Spine in May 2016. Hammond noted Plaintiff's annular tear at L5-S1 and concluded that Plaintiff was capable of light work involving lifting no more than 10 pounds, no repetitive bending, stooping, twisting or overhead work and no riding in hauling vehicles. (Tr. 587) Nerve conduction studies performed on Plaintiff in June 2016 were within normal limits, and EMG found no evidence of electrical instability. (Tr. 600)

In September 2016, Dr. Alex Garrido-Zambrano, Plaintiff's primary care physician, completed an application for Plaintiff to receive a temporary parking placard for persons with disabilities. He indicated that Plaintiff has chronic back pain and cannot walk more than 200 feet without stopping to rest. (Tr. 630) During the visit when Dr. Garrido-Zambrano completed the parking placard application, he also referred Plaintiff to a physical medicine and rehabilitation doctor for treatment of Plaintiff's chronic back pain. (Tr. 742)

In February 2017, Plaintiff was seen by Dr. Garrido-Zambrano after he fell and injured his tailbone. (Tr. 754) The doctor ordered an x-ray and an MRI and prescribed Norco for Plaintiff's pain. (Tr. 757) In March 2017, Plaintiff had a follow-up visit with Dr. Garrido-Zambrano to review the MRI results. The MRI showed a disc fissure at L5-S1 with advanced degenerative disc disease, and Plaintiff complained that his pain medication was not working. (Tr. 759) Dr. Garrido-Zambrano concluded in his assessment that Plaintiff suffered an intervertebral disc rupture, back pain, and hyperlipidemia. (Tr. 762) He referred Plaintiff to a neurosurgeon. (Tr. 762) On that visit, Dr. Garrido-Zambrano wrote a letter indicating that he had seen Plaintiff in February and

March that year, that Plaintiff should not work until June 21, 2017, and that Plaintiff should not lift, push, pull, or perform any strenuous activity. (Tr. 633) He also extended Plaintiff's Norco prescription. (Tr. 762) During that visit, Dr. Garrido-Zambrano filled out a "Physical Residual Functional Capacity and Medical Source Statement." (Tr. 1568) On the form, he identified Plaintiff's symptoms as including daily, persistent back pain and numbness made worse by activity. (Tr. 1568) He also indicated that Plaintiff cannot do physical work and is capable only of low stress jobs. (Tr. 1569)

In April 2017, Dr. Richard Kube completed a report indicating that Plaintiff was capable only of sedentary activity. (Tr. 647) Dr. Kube provided the same opinion regarding Plaintiff in May and November 2017. (Tr. 694 & 722) The ALJ found that Dr. Kube's assessment adequately reflected the treatment evidence and therefore deserved significant weight. (Tr. 827) In May and July 2017, Dr. Kube noted that Plaintiff's imaging revealed that his annular tear was increasing to "full thickness instead of just the outer one-third." (Tr. 719, 721)

In November 2017, Dr. James Coyle examined Plaintiff. Dr. Coyle noted that he had no abnormalities with gait but had a postural shift to the left. (Tr. 691) Plaintiff declined to toe walk, heel walk, or squat. (Tr. 691) His straight leg raise on the left produced lower back pain. Dr. Coyle reviewed Plaintiff's February 2017 MRI and noted internal disc derangement, facet arthropathy, and a mild disc bulge. The findings were similar to those of his March 2016 MRI. Dr. Coyle concluded that surgery "would be reasonable and appropriate and would consist of lumbar decompression L5-S1 with arthrodesis." (Tr. 692) Dr. Coyle noted that he did not believe the surgery was needed to

7

address Plaintiff's February 2017 injury. He also concluded that "[a]ll of [Plainitff's] findings referable to his disc herniation are subjective. He has no objective motor deficits or asymmetry of reflexes." (Tr. 692) Regarding Plaintiff's functional abilities, Dr. Coyle concluded that "[a]t the present time, [Plaintiff's] abilities to function are not determined. He has declined to toe walk, heel walk, or squat . . . . At the present time, he is not capable of working at full duty." (Tr. 692)

In January 2018, Dr. Garrido-Zambrano wrote a letter in support of Plaintiff's application for DIB in which he opined that Plaintiff could no longer perform his past work due to his disabilities and that he would have to be off task for at least twenty percent of the time and miss at least three days per month due to his disabilities. (Tr. 660) The ALJ gave this opinion little weight because he found that the medical documentation of Plaintiff's back pain does not support Dr. Garrido-Zambrano's assessment of the severity of his limitations. For instance, Dr. Garrido-Zambrano noted that Plaintiff's back pain began in December 2015, yet during a visit to a neurosurgeon in April 2017, he reported that his pain had improved after the 2015 injury such that he no longer required treatment before his second injury in April 2017. (Tr. 641)

In February 2020, Dr. Garrido-Zambrano examined Plaintiff again and reported normal findings on review of systems and physical exam. (Tr. 1578–79) However, he did note Plaintiff's chronic lower back pain and referenced a future referral to a physical medicine and rehabilitation physician. (Tr. 1580)

## Analysis

Plaintiff raises two arguments on appeal: (1) the ALJ erred by discounting a

treating medical source's opinion and (2) the ALJ erred by discounting Plaintiff's testimony regarding his pain.

First, Plaintiff argues that the ALJ should have given controlling weight to the opinion of Dr. Garrido-Zambrano, one of Plaintiff's treating physicians. Because Plaintiff filed his claim in 2016, his claim is subject to 20 C.F.R. § 404.1527, under which the Commissioner is generally to give more weight to the opinion of treating physicians. However, the regulations also provide that the ALJ may or may not give a treating physician's opinion controlling weight depending on several factors, including the length and nature of the treating relationship and the degree to which the opinion is supported with evidence and explanation. 20 C.F.R. § 404.1527(c). And an ALJ need only "minimally articulate his or her justification for rejecting or accepting" a physician's medical opinions. *See Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

The ALJ gave little or no weight to Dr. Garrido-Zambrano's opinions because he found that they were inconsistent with the medical evidence. Plaintiff argues that the ALJ was wrong to discount two of Dr. Garrido-Zambrano's opinions in particular. In a letter he wrote in March 2017, Dr. Garrido-Zambrano opined that Plaintiff should not work until June 21 and that he should not lift, push, pull, or perform any strenuous activity. The ALJ gave no weight to the opinion because Dr. Garrido-Zambrano did not point to a diagnosed medical impairment as the basis for the work-related restrictions. The ALJ added that the letter was internally inconsistent because it asserts that Plaintiff should not work but also offers specific work-related restrictions.

The ALJ offered minimal, credible reasons for discounting Dr. Garrido-

9

Zambrano's March 2017 letter. "An ALJ may discount a doctor's statements that are not adequately explained if the treatment notes do not clarify the doctor's reasoning." *Cooley v. Berryhill*, 738 F. App'x 877, 880 (7th Cir. 2018). As the ALJ observed, Dr. Garrido-Zambrano did not provide any clarification or justification for his conclusions in the letter itself. Plaintiff asserts that the letter is part of a multi-page exhibit that includes an MRI report that Dr. Garrido-Zambrano signed on the same day he wrote the letter and which documents advancing disc degeneration and an annular fissure. (Tr. 635) However, the fact remains that the letter offers no explanation of Dr. Garrido-Zambrano's conclusions. Further, the ALJ articulated reasons for finding that the March 2017 letter either contradicts itself or does not rule out sedentary work. Because the ALJ articulated minimal, credible reasons for discounting Dr. Garrido-Zambrano's opinion in the March 2017 letter, the Court will not second guess him.

Plaintiff is correct that the ALJ erred in discounting another one of Dr. Garrido-Zambrano's opinions. The ALJ took issue with the statements Dr. Garrido-Zambrano made on Plaintiff's application for a temporary parking placard, in which he indicated that Plaintiff had chronic back pain and could not walk further than 200 feet without stopping. The ALJ rejected that opinion based on his assumption that if Plaintiff had really been experiencing that level of pain, he would have presented with an assistive device or wheelchair when he was seen by Dr. Garrido-Zambrano at the time the doctor was completing the application. But the ALJ erred by discounting a medical opinion based on an assumption he made without reference to the medical evidence on record. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("[ALJs] are required to rely on expert

opinions instead of determining the significance of particular medical findings themselves.") (citing *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was in-consistent with a diagnosis of mental retardation because no expert offered evidence to that effect here."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")).

The ALJ bolstered his finding by referencing other parts of the medical record that indicated that Plaintiff denied gait instability, extremity weakness, and back pain, and that the doctor found only a moderate reduction in lumbar range of motion and tenderness in the lumbar region to palpation. (Tr. 825) However, the ALJ erred again by saying that these findings were made in September 2016, the same month that Dr. Garrido-Zambrano completed the application for the parking placard, when in fact the records were from an August 2016 visit. (Tr. 734–38) Further, the ALJ fails to address or account for the "Assessment/Plan" portion of the records from that visit in which Dr. Garrido-Zambrano discussed Plaintiff's chronic back pain and his plans for referring him to another specialist for treatment of it. (Tr. 737–38) For these reasons, Plaintiff is correct that the ALJ erred in his handling of this piece of the medical evidence.

However, the Court finds that the ALJ's error was harmless. The doctrine of harmless error applies to administrative decisions when the district court can predict "with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original

11

opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The ALJ thoroughly reviewed Dr. Garrido-Zambrano's opinions and articulated reasons for rejecting each of them. *See Berger*, 516 F.3d at 545 ("An ALJ must only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.") (internal quotation marks and citation omitted). Even if the ALJ's reasons for rejecting one of Dr. Garrido-Zambrano's opinions were in error, he consistently gave little or no weight to the doctor's opinions and found contrary opinions by other physicians to be more persuasive, including those of Dr. Kube, a treating specialist. Thus, the Court can say with great confidence that the ALJ would make the same ultimate finding on remand, even were he to correct this one error.

And there is substantial evidence supporting the ALJ's decision to discount Dr. Garrido-Zambrano's statements and opinions. The opinions of other medical providers who concluded that Plaintiff was capable of sedentary work before and after his second injury in 2017 provides substantial evidence supporting the ALJ's decision to discount Dr. Garrido-Zambrano's opinions. Specifically, medical records from Regional Brain & Spine in May 2016 indicated that Plaintiff could perform light work despite his injury to the L5-S1 disc. And Dr. Kube, a treating specialist, concluded that Plaintiff is capable of sedentary work during multiple examinations in 2017 following the second injury, despite the increasing annular tear in his L5-S1 disc. Further, the state agency consulting physicians all concluded that Plaintiff was capable of performing at light or medium levels of exertion. The fact that the ALJ gave these opinions no weight because they asked too much of Plaintiff shows the reasonableness of the ALJ's consideration. *See Burmester*

*v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Plaintiff also argues that the ALJ wrongfully relied on Dr. Coyle's independent medical examination in November 2017. Plaintiff takes issue with Dr. Coyle's assertion that the findings relating to Plaintiff's disc herniation were subjective when Dr. Coyle had also noted significant objective evidence of prolapse, disc derangement, and annular fissure. The Court agrees that Dr. Coyle's conclusions are difficult to reconcile with each other. Yet, while the ALJ notes Dr. Coyle's conclusions, he does not appear to rely on them. In fact, his only comment is to reject two of Dr. Coyle's conclusions. For example, the ALJ rejected Dr. Coyle's opinion that Plaintiff could not work at full duty, because that opinion went to the ultimate issue of disability, "which is a legal issue reserved for the Commissioner." (Tr. 827) As inconsistent as Dr. Coyle's assessment appears to be, the ALJ did not rely on it, as Plaintiff seems to think. Thus, the ALJ did not err in his handling of Dr. Coyle's opinions. The Court finds that substantial evidence supports the ALJ's decision to discount Dr. Garrido-Zambrano's opinions and any error he committed in doing so was harmless.

Plaintiff's second argument on appeal is that the ALJ wrongfully discounted his subjective complaints of pain. When evaluating subjective symptoms, the ALJ must consider whether the symptoms are consistent with the objective medical evidence. 20 C.F.R. § 404.1529(a). Specifically, when evaluating the intensity and persistence of pain, the ALJ must "consider all of the available evidence from [the] medical sources and nonmedical sources about how [Plainitff's] symptoms affect [him]." 20 C.F.R. § 404.1529(c)(1). The ALJ found that Plaintiff's testimony regarding the intensity and

13

persistence of his pain was not credible in light of the objective medical evidence. (Tr. 821) As discussed above, there is substantial evidence from Plaintiff's medical records indicating that he is capable of sedentary work with the additional limitations contained in his RFC. Thus, the ALJ did not err by discounting Plaintiff's testimony regarding the extent and limiting effects of his pain.

But Plaintiff argues specifically that the ALJ improperly assessed his abilities with respect to daily activities. In his most recent function report, Plaintiff reported that he watches TV and plays games on his phone for short periods of time. (Tr. 1190) The ALJ cited this information as evidence that Plaintiff did not have more than a mild limitation in his ability to maintain concentration, persistence, or pace. (Tr. 823) Plaintiff argues that the Appeals Council's instructions on remand required the ALJ to ask Plaintiff questions to develop the record. Specifically, Plaintiff argues the ALJ should have enlisted his assistance to better understand any additional limitations Plaintiff may have in his activities of daily living or to further understand why he could only play games on his phone for short periods of time. (Doc. 19 at 18) However, the Appeals Council's instructions say that the ALJ "*may* enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources." (Tr. 809, emphasis added) Not only do the instructions not require the ALJ to ask for Plaintiff's assistance in developing the record, they only address developing the record of evidence from Plaintiff's treating sources, not his reported activities of daily living. Further, the ALJ has no burden to ask Plaintiff about his reported activities of daily living. *See McHenry v. Berryhill*, 911 F.3d 866, 873–74 (7th Cir. 2018).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed only a harmless legal error, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**SO ORDERED.**

Dated: August 10, 2021

_____
DAVID W. DUGAN
United States District Judge